UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DR. GERALD FINKEL, *as Chairman of the*
*Joint Industry Board of the Electrical Industry*,

                            Plaintiff,

                  -against-

UNIVERSAL SECURITY SYSTEMS, INC.,

                           Defendant.

--------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**10 CV 4520 (NGG)(LB)**

**BLOOM, United States Magistrate Judge:**

       Plaintiff, Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical Industry,

brings this civil action against defendant Universal Security Systems, Inc., to recover unpaid employee

benefit fund contributions, as well as injunctive relief, pursuant to Sections 404, 409, 502 and 515 of

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1109, 1132,

and 1145.  Plaintiff also seeks other sums due under collective bargaining agreements pursuant to

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Despite proper

service of the summons and complaint, defendant has failed to plead or otherwise defend this action.

On March 29, 2011, plaintiff moved for a default judgment pursuant to Rule 55 of the Federal Rules of

Civil Procedure.  The Honorable Nicholas G. Garaufis granted plaintiff's motion for default judgment

and referred this matter to me for a Report and Recommendation in accordance with 28 U.S.C. §

636(b).  For the reasons set forth below, it is respectfully recommended that the default judgment

should be entered against defendant for: $197,568.37 in unpaid contributions; $8,098.14 in interest

plus per diem interest of $17.75 from March 30, 2011 through the date of judgment; $119, 653.14 in

liquidated damages; $4,372.50 in attorney's fees; and $423.28 in costs.  It is further recommended that

plaintiff's request for injunctive relief should be denied.

# BACKGROUND

Plaintiff, as Chairman of the Joint Industry Board of the Electrical Industry ("Joint Board"), is the administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("Union") and the New York Electrical Contractors Association, Inc. and the Association of Electrical Contractors, Inc. (collectively, "Associations"). (Docket Entry 1, Compl. ¶¶ 4, 11-14.) These collective bargaining agreements provide for weekly employer contributions to a number of employee benefit plans covered by ERISA ("ERISA Contributions"),[1] as well as for contributions not covered by ERISA, including payments to other benefit plans, assessments of union dues, and employee loan repayments owed to the Union and the ERISA plans (collectively, "Non-ERISA contributions").[2] (Id. ¶¶ 5-7.)

Defendant, an electrical contracting business, is an employer within the meaning of Section 3(5) of ERISA and Section 301(a) of LMRA. (Compl. ¶ 10.) As a member of the Association of Electrical Contractors, Inc., defendant is bound to the terms of the collective bargaining agreements between the Union and the Associations. (Id. ¶¶ 11-14.) The two collective bargaining agreements at issue in this case cover the periods from May 10, 2007 through May 13, 2010 (the "2007 CBA") and May 14, 2010 through May 8, 2013 (the "2010 CBA").[3] (Id. ¶¶ 13-14; docket entry 8, Sessa Decl. ¶ 4; docket entry 9, Herman Decl. ¶ 12.) Defendant is required to make contributions at the rates set forth

---

[1] The Joint Board acts as the fiduciary of the following plans within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA: the Pension, Hospitalization and Benefit Plan of the Electrical Industry ("PHBP"), the Dental Benefit Fund of the Electrical Industry ("DEN"), the Deferred Salary Plan of the Electrical Industry ("401(k) Plan"), the Educational and Cultural Trust Fund of the Electrical Industry ("E&C"), the Annuity Plan of the Electrical Industry ("ANN"), the Vacation-Holiday Unemployment Plan of the Electrical Industry ("VHUI"), the Health Reimbursement Account Plan of the Electrical Industry ("HRAP"), and the National Employees Benefit Fund ("NEBF") (collectively, "ERISA Plans"). (Compl. ¶ 5.) These plans are employee benefit plans within the meaning of Section 3(3) of ERISA and multiemployer plans within the meaning of Section 3(37) of ERISA.

[2] The employee benefit plans not covered by ERISA include: the Electrical Employers Self Insurance Safety Plan ("EESISP"), the Benefit and Wage Delinquency Fund ("Delinquency Fund"), and the Committee on Political Education ("COPE"). (Compl. ¶ 7.)

[3] Plaintiff's Memorandum of Law in Support of Motion for Default Judgment states that the 2010 CBA covers May 14, 2010 through May 13, 2013. (Docket entry 10, Pl.'s Mem. 8.)

in the collective bargaining agreements for any employee performing work covered by the agreements,[4] and to submit weekly payroll reports to the Joint Board and weekly 401(k) Plan reports to Mercer Trust Company Investments ("Mercer"), the third-party record-keeper retained by the 401(k) Plan.  (Compl. ¶¶ 6, 16-19.)

Plaintiff alleges that defendant failed to remit the required contributions and information to the Joint Board and Mercer for various weeks covered by the CBA (id. ¶¶ 23-25), and that defendant failed to make timely contributions for other weeks (id. ¶¶ 31-37).  Plaintiff also alleges that an audit of defendant's 2008-2009 payroll records revealed that defendant underreported the wages of seven employees who performed work during that period, resulting in further unpaid benefit contributions. (Id. ¶¶ 27-30.)

Plaintiff commenced this action on October 5, 2010.  The complaint asserts that defendant violated ERISA by failing to remit benefit fund contributions and breaching its fiduciary duties under the 401(k) Plan; the complaint further asserts that defendant violated the LMRA by breaching the CBAs.  (Id. ¶¶ 40-51.)  Plaintiff seeks: (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) interest on late-paid contributions made prior to the commencement of this action, (4) interest on late-paid contributions made after the commencement of this action, (5) liquidated damages related to the unpaid contributions and contributions paid late after the complaint was filed, (6) attorney's fees, and (7) costs of the action.  (Id. Prayer for Relief ¶¶ B-G.)  Plaintiff also seeks injunctive relief requiring defendant to submit payroll reports and 401(k) Plan reports for any weeks that they have not been submitted prior to the date judgment is entered.  (Id. Prayer for Relief ¶ A.)  On October 13, 2010, plaintiff served defendant with process by service upon the New York Secretary of State.  (Docket entry 2.)  On December 16, 2010, plaintiff requested that a default be entered against defendant, and the Clerk of Court noted defendant's default.  (Docket entries 3-4.)  Plaintiff moved for

---

[4] The contribution rates for the EESISP are set by the Trustees of that plan, and the rates for COPE and dues assessments are set forth in memoranda by the Joint Board.  (Sessa Decl. ¶¶ 7-10.)

default judgment on March 29, 2011. (Docket entries 7-10.) By Memorandum and Order dated July 29, 2011, Judge Garaufis granted plaintiff's motion and referred the matter to me for a Report and Recommendation on damages and injunctive relief in accordance with 28 U.S.C. § 636(b). (Docket entry 11.)

## DISCUSSION

**A.    Liability**

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. at 153 (alteration in original) (quotation omitted).

By Memorandum and Order dated July 29, 2011, the Court found the allegations in plaintiff's complaint sufficient to establish defendant's liability. (Docket entry 11.)

**B.      Damages**

However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009). A plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais, 183 F.3d at 155 (citing Transatlantic Marine, 109 F.3d at 111). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate default, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). "Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) and Credit Lyonnais, 183 F.3d at 155).

The following documents support plaintiff's claim for damages: the declaration of Peter Herman, plaintiff's attorney, detailing plaintiff's calculation of damages; the declaration of Christina Sessa, the Associate Counsel of the Joint Board, further detailing plaintiff's calculation of damages; the relevant collective bargaining agreements, trust agreements, and memoranda setting forth interest rates (Sessa Decl. Exs. A-M, T); invoices summarizing the amounts due to each plan based on defendant's payroll reports from August 4, 2010 to March 21, 2011 (id. Ex. N); printouts of plaintiff's database of the 401(k) reports submitted by Mercer for the weeks from December 15, 2010 to April 6, 2011 (id. Ex. O); the audit report and letters related to that report (id. Exs. P-R); various letters demanding payments from defendant (id. Exs. U-V); contemporaneous time records reflecting the hours worked on this matter by Mr. Herman, attorney Manlio DiPreta, and two paralegals from their law firm (Herman Decl. Ex. C); and finally, invoices reflecting plaintiff's costs (id. Exs. C-D). These

submissions provide a sufficient basis for the Court to determine damages, and therefore a hearing is not necessary.

Section 502 of ERISA sets forth the damages that are recoverable for an employer's failure to remit contributions as required by Section 515 of ERISA. Section 502 provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> > (A) the unpaid contributions,
> > (B) interest on the unpaid contributions,
> > (C) an amount equal to the greater of –
> > > (i) interest on the unpaid contributions, or
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> > (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> > (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The Court may also award damages that have accrued while the lawsuit is pending if the complaint put defendant on notice that plaintiff might seek such relief. See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010). Here, the complaint includes a request for unpaid contributions that accrue subsequent to the complaint's filing, as well as a request for interest and liquidated damages on unpaid and late-paid contributions that accrue subsequent to the complaint's filing. (Compl. ¶¶ 26, 33, 37-39, Prayer for Relief ¶¶ A-E.) Accordingly, defendant was on notice that it could be held liable for these damages.

**1. Unpaid Contributions**

**a. January – March 2011**

Plaintiff's complaint seeks unpaid contributions as of the date this action was commenced, as well as unpaid contributions that have accrued since that time. (Compl. ¶¶ 23-26.) Two general categories of unpaid contributions are sought by plaintiff: (1) the unpaid contributions to the ERISA

Plans (except the 401(k) Plan) and the Non-ERISA Contributions, which plaintiff refers to as the "JIB Contributions"; and (2) the unpaid contributions to the 401(k) Plan.

Plaintiff's complaint specifically sought unpaid JIB Contributions for the weeks ending August 4, 2010 through September 22, 2010 (id. ¶ 24), and unpaid contributions to the 401(k) Plan for the weeks ending August 18, 2010 through September 22, 2010 (id. ¶ 25). However, as defendant has remitted some of those payments since the time the complaint was filed (Sessa Decl. ¶¶ 30, 32), plaintiff's instant motion only seeks unpaid JIB Contributions for the weeks ending February 2, 2011 through March 16, 2011, and unpaid 401(k) Plan contributions for the weeks ending January 5, 2011 through March 16, 2011 (id. ¶¶ 18-19; Herman Decl. ¶ 15, Ex. A; Pl.'s Mem. 10).[5]

To show the unpaid JIB contributions, plaintiff provides invoices for the weekly payroll reports for the weeks ending February 2, 2011 through March 16, 2011. (Sessa Decl. Ex. N at 28-34.) These reports show the contribution due to each plan for each week. As to the 401(k) Plan payments, plaintiff provides printouts of data from the 401(k) reports submitted by Mercer. He provides data for the first two weeks of the unpaid payments, but states that defendant failed to submit payroll reports to Mercer for the weeks ending January 19, 2011 through March 16, 2011. (Id. ¶ 20; Herman Decl. ¶ 15.) "If a plaintiff establishes that an employer's records are inadequate, for example by showing that an employer failed to submit required payroll reports, the court may estimate the amount of damages to be awarded." Finkel v. Rico Elec., Inc., No. 07-CV-2145 (ARR)(SMG), 2009 WL 3367057, at *4 (E.D.N.Y. Oct. 16, 2009). Therefore, the calculation of contributions due for the weeks ending January 19, 2011 through March 16, 2011 is based on the 401(k) Plan data submitted by defendant for the week ending January 12, 2011.

Plaintiff claims that the ERISA and Non-ERISA weekly contributions are due as follows:

---

[5] The Court references the ECF page numbers.

7

| ERISA Plan | Unpaid Contributions Due |
| --- | --- |
| PHBP | $66,632.20 |
| DEN | $5,437.15 |
| ANN | $19,640.30 |
| E&C | $815.80 |
| VHUI | $4,644.70 |
| NEBF | $5,380.22 |
| 401(k) Plan | $63,668.28 |
| **TOTAL ERISA** | **$166,218.65** |

| Non-ERISA Plans & Contributions | Unpaid Contributions Due |
| --- | --- |
| EESISP | $8,967.04 |
| COPE | $4.76 |
| Joint Board | $1,401.14 |
| Union Dues | $1,417.50 |
| Employee Loan Repayments | $10.00 |
| Delinquency Fund | $431.81 |
| **TOTAL NON-ERISA** | **$12,232.25** |
| **TOTAL UNPAID CONTRIBUTIONS** | **$178,450.90** |

(Herman Decl. ¶ 15, Ex. A.)  The Court has reviewed the weekly payroll invoices and 401(k) Plan data, and plaintiff's calculation of unpaid contributions is correct.  Accordingly, the Court respectfully recommends that plaintiff should be awarded $178,450.90 in unpaid contributions.

**b. Audit Deficiency**

Based on the results of an April 21, 2010 audit of defendant's payroll records, plaintiff calculated a net underpayment of $19,117.47 in benefit contributions for the weeks ending January 1, 2008 through December 30, 2009.  (Sessa Decl. ¶¶ 21-22.)  Plaintiff submits letters dated July 19, 2010, September 28, 2010, and October 13, 2010 demonstrating that defendant was notified and

requested to pay this amount.  (Id. Exs. P-R.)  The July 19, 2010 letter includes the audit report, which

reflects the amount of unreported employee wages during the audit period, as well as the benefit

contributions due on those wages.  (Id. Ex. P.)  The letter and audit reports are sufficient proof to

demonstrate plaintiff's damages.  The audit report lists the unpaid contribution amounts as follows:

| Plan | Unpaid Contribution |
| --- | --- |
| PHBP | $5,778.03 |
| DEN | $591.73 |
| ANN | $6,552.00 |
| E&C | $145.03 |
| VHUI | $3,770.80 |
| NEBF | $1,409.70 |
| EESISP | $870.18 |
| **TOTAL INTEREST DUE** | **$19,117.47** |

(Id. Ex. P.)  The letters and audit report calculate the amounts due by multiplying the amount of

unreported wages by certain percentages for each type of benefit, excluding the ANN benefits, which

are calculated according to the amount of dollars to be contributed per hour worked.  However, the

report does not otherwise explain the nature of the percentages or calculations.  The Court has

reviewed the limited information provided by the audit report, and plaintiff's calculation of unpaid

contributions appears to be correct.  Accordingly, the Court respectfully recommends that plaintiff

should be awarded the $19,117.47 audit deficiency.  Thus, plaintiff should be awarded $197,568.37

representing the total amount of unpaid contributions, including the audit deficiency.

**2.      Interest**

Plaintiff seeks interest on unpaid contributions and on contributions that defendant paid late

both prior and subsequent to the commencement of this action.  Section 502 of ERISA provides that

interest on unpaid contributions is calculated "using the rate provided under the plan, or, if none, the

rate prescribed under section 6621 of Title 26."  29 U.S.C. § 1132(g)(2).  Here, only the NEBF trust

agreement provides for a specific interest rate.  (Herman Decl. ¶ 18.)[6]  Pursuant to the trust agreement, the interest on delinquent contributions to NEBF is calculated at a ten percent annual rate compounded monthly.  (Id. ¶ 18; Sessa Decl. Ex. J at 45.)  Section 6621 of Title 26 of the United States Code provides for an interest rate of four percent for April 1, 2009 through December 31, 2010, and a rate of three percent for January 1, 2011 through March 31, 2011.  (Herman Decl. Ex. B.)  Therefore, the Court will calculate interest at these percentage rates for all unpaid or late-paid contributions, except those relating to NEBF, for which the ten percent interest rate applies.

### a. Interest on Unpaid Contributions

Plaintiff seeks interest on unpaid contributions, including the audit deficiency, from the time that payment was due until the entry of judgment.  Plaintiff is entitled to interest on unpaid contributions to the ERISA Plans under Section 502 of ERISA, and interest on unpaid contributions to the Non-ERISA Plans under the collective bargaining agreements and trust agreements.[7]  Plaintiff calculates the interest due on unpaid contributions to the ERISA Plans and Non-ERISA Plans as follows:[8]

---

[6] Plaintiff provides conflicting information as to the applicable interest rate for the NEBF plan.  While Mr. Herman's affidavit and attached calculations demonstrate that plaintiff calculated its damages using a separate interest rate for the NEBF plan (Herman Decl. ¶ 18, Ex. B.), Ms. Sessa's declaration and plaintiff's memorandum of law both state that the Joint Board adopted the § 6621 rate for *all* plans. (Sessa Decl. ¶ 28 ("Effective June 1, 2007, the Joint Board has adopted the rate established by 26 U.S.C. § 6621 as the interest rate for delinquent contributions *to all Plans*.") (emphasis added), Ex. T; Pl.'s Mem. 16.)  However, as ERISA states that interest should be calculated at the rate provided by the plan, and plaintiff has calculated his damages according to the rate in the NEBF plan, the Court relies on the ten percent interest rate established by the NEBF trust agreement.

[7] Under the Joint Industry Board's Delinquency Policy and various trust agreements, contributions paid to the employee benefit funds more than forty-two days after the end of the payroll week are charged interest.  (Sessa Decl. Ex. U.)

[8] The interest on all unpaid and late-paid contributions, except to NEBF, was calculated as follows: (1) multiplying the amount of contribution due by the interest rate; (2) multiplying that product by the number of days accrued between the date the contribution was due and the date the payment was made, or if unpaid, the date interest was calculated; and (3) dividing that product by 365.  (Herman Decl. ¶ 19.)  Plaintiff provides the following formula for calculating the monthly-compounded interest on contributions to NEBF: Interest Due = (C*(1+F/12)^E)-C, where C = the contribution amount, F = the annual interest rate, and E = the months accrued between the date the contribution was due and paid, or if unpaid, the date interest was calculated.  (Id. ¶ 19 n.3, Ex. A at 7.)  Per diem interest was calculated by multiplying the amount of the unpaid contribution by the applicable interest rate, and dividing by 365.  (Id. ¶ 19 n.4.)

| Plan | Interest Due On Unpaid Contributions as of 3/29/11 | Per Diem Interest Due Until Date of Judgment |
| --- | --- | --- |
| PHBP | $176.04 | $5.47 |
| DEN | $14.39 | $0.46 |
| ANN | $51.92 | $1.60 |
| E&C | $2.16 | $0.07 |
| VHUI | $12.51 | $0.37 |
| NEBF | $48.20 | $1.47 |
| 401(k) Plan | $249.04 | $5.22 |
| EESISP | $23.85 | $0.73 |
| COPE | $0.00 | $0.00 |
| Joint Board | $3.70 | $0.11 |
| Union Dues | $3.77 | $0.12 |
| Employee Loan Repayments | $0.02 | $0.00 |
| Delinquency Fund | $1.13 | $0.03 |
| **TOTAL INTEREST DUE** | **$586.73** | **$15.65** |

(Herman Decl. ¶ 20, Ex. A.) The Court has reviewed plaintiff's calculation of interest on unpaid contributions, and it is correct. Accordingly, it is respectfully recommended that plaintiff be awarded $586.73 in interest on unpaid contributions, plus per diem interest of $15.65 from March 30, 2011 until the entry of judgment.

In addition, plaintiff seeks $716.51 in interest on the audit deficiency, plus $2.10 per diem interest. Plaintiff calculates the interest due at a rate of four percent (Herman Decl. Ex. A at 30), the interest rate pursuant to Section 6621 at the time of the April 21, 2010 audit. However, the Court finds it appropriate to calculate interest from the date that plaintiff first demanded payment of the audit deficiency from defendant, July 19, 2010. (Sessa Decl. ¶ 23, Ex. P.) See Finkel, 2009 WL 3367057, at *6 (finding that plaintiff should have calculated interest on an audit deficiency from the date of the demand rather than the audit date). Accordingly, the Court should award plaintiff $530.05 in interest

for the unpaid contributions reported in the audit, plus $2.10 per diem interest from March 30, 2011 through the entry of judgment.[9]

In sum, it is respectfully recommended that plaintiff should be awarded a total of $1,116.78 in interest on unpaid contributions, plus per diem interest of $17.75 from March 30, 2011 until the entry of judgment. The per diem interest on unpaid contributions through the date of judgment should be calculated by the Clerk of the Court.

**b. Interest on Late-Paid Contributions**

Plaintiff seeks interest on all late-paid contributions from the date payment was due until the date payment was made. "ERISA does not provide a statutory basis for damages on delinquent contributions that were paid prior to filing suit," Finkel, 2009 WL 3367057, at *3, but the collective bargaining agreements and trust agreements provide a contractual basis for the recovery of interest on all untimely contribution payments. (Compl. ¶¶ 21-22.)

Prior to the commencement of this action, defendant made untimely JIB Contributions for the weeks ending June 24, 2009 through November 25, 2009 and December 30, 2009 through July 28, 2010 (Sessa Decl. ¶ 29, Ex. U), as well as untimely 401(k) Plan contributions for the weeks ending February 11, 2009 through June 2, 2010 (id. ¶ 31, Ex. V). Plaintiff submits the demand letters sent to defendant on February 18, 2011 and July 15, 2010; the letters attach lists reflecting the weekly contributions paid and how many days late the payments were made. (Id. Exs. U-V.) Plaintiff claims that $2,796.59 in interest is due on late JIB Contributions (id. ¶ 29, Ex. U), and $1,521.79 in interest is due on late contributions to the 401(k) Plan (id. ¶ 31, Ex. V). The Court has reviewed plaintiff's calculation of interest on 401(k) Plan contributions paid late before the commencement of this action, and it is correct; however, plaintiff's calculation of interest on the late-paid JIB contributions includes a small but unexplained amount of additional interest. The list of late-paid JIB contributions attached

_____

[9] Interest on the audit deficiency is calculated as follows: ($19,117.47 unpaid x 4% interest) x (253 days/365 days) = $530.05 interest due. Plaintiff's per diem interest calculation is correct: ($19,117.47 unpaid x 4% interest) / 365 days = $2.10 per diem interest.

to the demand letter includes an amount of interest labeled "ADDT. INT," which plaintiff does not explain to the Court.  (Id. Ex. U.)  As the Court relies on the record before it, plaintiff's damages for interest owed on late-paid JIB contributions total $2,720.19, excluding the unexplained amount.[10] Accordingly, it is respectfully recommended that plaintiff should be awarded $4,241.98 in interest for late payments made prior to the commencement of this action.

Subsequent to the commencement of this action, as demonstrated by the weekly payroll reports, defendant failed to timely remit JIB Contributions for the weeks ending August 4, 2010 through January 26, 2011 (id. ¶ 30), as well as 401(k) Plan contributions for the weeks ending August 18, 2010 through December 29, 2010 (id. ¶ 32).  Plaintiff calculates the interest due on defendant's contributions that were paid late after the commencement of this litigation as follows:

---

[10] Plaintiff calculates interest on all of the late-paid JIB contributions using a four percent interest rate.  (Sessa Decl. Ex. U.) It is unclear why plaintiff does not calculate interest due on the late NEBF contributions using the higher interest rate of ten percent, as the trust agreement provides.  As plaintiff does not specify the amount due to NEBF during this period, the Court cannot calculate the interest due on late NEBF contributions at the ten percent interest rate.

| Plan | Interest Due On Late Contributions |
|---|---|
| PHBP | $1,098.73 |
| DEN | $90.17 |
| ANN | $314.08 |
| E&C | $14.58 |
| VHUI | $59.62 |
| NEBF | $221.16 |
| 401(k) Plan | $748.19 |
| EESISP | $140.89 |
| COPE | $0.00 |
| Joint Board | $21.75 |
| Union Dues | $23.30 |
| Employee Loan Repayments | $0.16 |
| Delinquency Fund | $6.75 |
| **TOTAL INTEREST DUE** | **$2,739.38** |

(Herman Decl. ¶ 21, Ex. A.) The Court has reviewed plaintiff's calculation of interest on contributions paid late after the commencement of this action, and it is correct.[11] Accordingly, it is respectfully recommended that plaintiff should be awarded $2,739.38 in interest for late payments made prior to the commencement of this action.

In sum, it is respectfully recommended that the Court award plaintiff $6,981.36 in interest on contributions paid late before and after the commencement of this action. Plaintiff should be awarded a total of $8,098.14 in interest, plus per diem interest of $17.75 from March 30, 2011 until the entry of

---

[11] One step of plaintiff's interest calculations relies on the number of days accrued between the date the late-paid contributions were due and the date the payments were made, which plaintiff lists on the spreadsheets demonstrating his damages calculations. (Herman Decl. Ex. A.) Although plaintiff does not explain the documentary evidence proving the dates the late JIB payments were received, the Court notes that those dates are stamped at the bottom of the relevant invoices. (Sessa Decl. Ex. N.) In addition, plaintiff's records of the late-paid 401(k) contributions exclude some of the dates the late 401(k) payments were received (id. Ex. O), though those dates are included in the relevant spreadsheets (Herman Decl. Ex. A). As the dates the late-paid 401(k) payments were made appear to match the dates the late-paid JIB payments were made, the Court relies on plaintiff's spreadsheets and the dates on the JIB invoices. Further, the Court notes that although plaintiff's spreadsheets for the NEBF and 401(k) plans mislabel columns E and G, respectively, as the months or days "between date of interest calculation and week ending date," the damages are correctly calculated using the number of months or days between the date the payment was due and the date it was paid. (Id. Ex. A at 21-22.)

judgment.

### 3.    Liquidated Damages

Plaintiff seeks liquidated damages pursuant to Section 502 of ERISA, which provides for liquidated damages in an amount equal to the greater of (1) the interest due on the unpaid contributions, or (2) up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements.  29 U.S.C. § 1132(g)(2)(C).  Liquidated damages are calculated on unpaid ERISA contributions alleged in the complaint, as well as ERISA contributions that subsequently become due and remain unpaid or were paid late.  See Iron Workers Dist. Council Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, 68 F.3d 1502, 1507 (2d Cir. 1995) ("[A]n award of . . . liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."); see also Finkel, 2009 WL 3367057, at *7 (subtracting from plaintiff's calculation of damages the amounts related to contributions that were paid late prior to the filing of the second amended complaint).  The PHBP trust agreement provides for liquidated damages in the amount of twenty percent of delinquent contributions (Herman Decl. ¶ 26; Sessa Decl. Ex. C at 23), and the collective bargaining agreements also provide for liquidated damages in the amount of twenty percent of delinquent contributions to each ERISA Plan.  (Herman Decl. ¶ 26; Sessa Decl. Ex. A at 13, Ex. B at 26.)  Plaintiff seeks the following amount of liquidated damages provided under these agreements, which is greater than the interest due on the unpaid contributions (Herman Decl. ¶ 28), calculated as follows:

| Plan | Liquidated Damages Due On Unpaid and Late-Paid ERISA Plan Contributions |
|---|---|
| PHBP | $51,734.42 |
| DEN | $4,237.53 |
| ANN | $14,862.71 |
| E&C | $673.35 |
| VHUI | $2,939.35 |
| NEBF | $4,001.03 |
| 401(k) Plan | $37,555.29 |
| **TOTAL** | **$116,003.68** |

(Herman Decl. ¶ 27, Ex. A.)  The Court has reviewed plaintiff's calculation of liquidated damages on unpaid and late-paid contributions to the ERISA Plans, and it is correct.  Plaintiff did not calculate liquidated damages on those contributions to the ERISA Plans that defendant paid late prior to the commencement of this action.  Accordingly, it is respectfully recommended that plaintiff should be awarded $116,003.68 in liquidated damages on the unpaid and late-paid ERISA contributions.

Plaintiff also seeks $3,823.49 in liquidated damages on the unpaid contributions reported in the audit.  Plaintiff calculates the liquidated damages at twenty percent of $19,117.47, the full amount of the audit deficiency.  (Herman Decl. ¶ 28, Ex. A at 30.)  However, the total amount of the reported deficiency also includes unpaid contributions to the EESISP, a non-ERISA plan.  (Sessa Decl. Ex. P.)  As the amount of the audit deficiency attributed to the EESISP is $870.18, plaintiff should only receive liquidated damages at twenty percent of the remaining $18,247.29 deficiency attributed to the ERISA plans.  See Finkel, 2009 WL 3367057, at *7 (excluding the unpaid EESISP contributions from the calculation of plaintiff's liquidated damages for an audit deficiency).  Accordingly, plaintiff should receive $3,649.46 in liquidated damages on the audit deficiency.

In sum, it is respectfully recommended that plaintiff should be awarded a total of $119, 653.14 in liquidated damages on the ERISA contributions and audit deficiency.

16

**4. Attorney's Fees**

Plaintiff also seeks attorney's fees under Section 502 of ERISA. An award of attorney's fees under Section 502 of ERISA is mandatory. See 29 U.S.C. § 1132(g)(2) ("the court shall award . . . reasonable attorney's fees"); Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004). "The determination of an appropriate award of attorney's fees under ERISA lies within the sound discretion of the district judge." Trs. of the Local 1034 I.B.T. Ins. Trust Fund v. R&L Livery, Inc., No. 09-CV-4442 (ARR)(JMA), 2010 WL 3613967, at * 3 (E.D.N.Y. Aug. 17, 2010) (internal quotation omitted). The district court should determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). The "presumptively reasonable fee" is calculated "as a product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." Trs. of the Local 1034 I.B.T. Ins. Trust Fund, 2010 WL 3613967, at *9 (citing Arbor Hill, 522 F.3d at 183-84). In determining the reasonable fee for a particular case, "[t]he Court should rely on reasonable hourly rates approved by other courts in the District and its own familiarity with the prevailing rates in its District." Trs. of the Local 813 I.B.T. Ins. Trust Fund v. Sprint Recycling, Inc., No. 09-CV-04435 (FB)(RER), 2010 WL 3613839, at * 4 (E.D.N.Y. Aug. 6, 2010).

Here, plaintiff seeks to recover the legal fees of attorneys Peter Herman and Manlio DiPreta and two paralegals, Kaitlin C. Love and Peter Ellis. (Herman Decl. ¶¶ 29-37, Ex. C.) Plaintiff was billed at $275 per hour for the work performed by Mr. Herman, and $250 per hour for Mr. DiPreta. (Id. ¶ 31.) Mr. Herman is a partner with the firm Cohen, Weiss, and Simon LLP who has over thirty years of relevant experience. (Id. ¶¶ 1, 35.) Mr. DiPreta, a former partner with Cohen, Weiss, and Simon LLP, has practiced labor and employee benefits law since he graduated from law school in 1984. (Id. ¶ 35, Ex. D at 8.) Mr. Herman's and Mr. DiPreta's hourly rates are comparable to the

prevailing rate in the Eastern District for similar work. See Trs. of the Local 813 I.B.T. Ins. Trust

Fund v. Amanda Carting Corp., No. 07-CV-656 (FB)(KAM), 2007 WL 4324019, at *6 (E.D.N.Y. Dec.

7, 2007) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200

to $375 for partners.") Thus, the Court finds that the rates of $275 per hour for Mr. Herman and $250

for Mr. DiPreta are reasonable.

Plaintiff was also billed $80-90 per hour for work performed by the two paralegals on this

case.[12] (Herman Decl. ¶ 31.) The Court finds $80 per hour for paralegal work to be reasonable. See

Finkel v. Millenium Fire Servs. LLC, No. 09 CV 540(RRM), 2011 WL 866995, at *17-18 (E.D.N.Y.

Feb. 16, 2011) (citing cases finding $75-$80 reasonable). However, $90 per hour is greater than rates

typically awarded for legal assistants or paralegals on ERISA default cases in this district, and plaintiff

submits no justification for a higher hourly rate in this case. Therefore, the Court recommends that the

paralegals' rate should be reduced to $80 per hour for all hours worked. See Trs. of the Plumbers

Local Union No. 1 Welfare Fund v. N.Y. Pipeline Mech. Contractors, LLC, No. 09-CV-1349

(JG)(JMA), 2010 WL 1221430, at *6 (E.D.N.Y. Mar. 23, 2010) (reviewing Eastern District cases that

find $80 per hour for paralegals to be reasonable and reducing a $90 per hour rate to $80 per hour);

Trs. of the Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc., No. CV-

08-3939 (CBA)(SMG), 2010 WL 1265197, at *4 (E.D.N.Y. Feb. 18, 2010) (same).

Having determined the reasonable hourly rates to be used in this case, the Court now turns to

the reasonableness of the hours billed in this matter. See e.g., Finkel v. Metro. Sign & Maint. Corp.,

No. 09 CV 4416 (SJ), 2010 WL 3940448, at * 15-17 (E.D.N.Y. Aug. 12, 2010). The contemporaneous

time records submitted by plaintiff reflect that Mr. Herman worked for 6.5 hours, Mr. DiPreta worked

for 0.1 hours, and the two paralegals worked for 32 hours, for a total of 38.6 hours. (Herman Decl. ¶

36, Ex. C.) Plaintiff's counsel has specified the work they performed. (Id. ¶33, Ex. C.) The Court has

---

[12] The hourly rate for work performed by paralegals changed from $80 to $90 on January 1, 2011. (Herman Decl. ¶ 31.)

reviewed the time records and finds the amount of time expended on this ERISA action is reasonable. See Finkel v. GB Legend Elec. Contractors Corp., No. 10-CV-1559 (RRM)(JO), 2011 WL 1153678, at *8 (E.D.N.Y. Mar. 11, 2011) (approving 37.1 hours, including 29.1 paralegal hours, spent on similar ERISA default judgment).  Accordingly, it is respectfully recommended that plaintiff should be awarded $4,372.50 in attorney's fees.[13]

5.      **Costs**

Plaintiff also seeks to recover costs related to litigating this action.  Specifically, plaintiff seeks $423.28, which includes $350 for filing the complaint, $62 for service of process, and $11.28 in additional expenses such as photocopying, facsimiles, postage, ground transportation, and computer research.  (Herman Decl. ¶¶ 38-43, Exs. C-D.)  These amounts are reasonable.  See Finkel, 2009 WL 3367057, at *28 (awarding $931.46 in costs for filing, service, postage, and photocopying in ERISA default action).  Accordingly, it is respectfully recommended that plaintiff should be awarded $423.28 in costs.

6.      **Injunctive Relief**

Finally, plaintiff's complaint seeks an injunction requiring defendant to submit "Payroll Reports and 401(k) Plan Reports for any weeks for which such reports have not been submitted as of the date judgment is entered."  (Compl. Prayer for Relief ¶ B.)  Plaintiff's instant motion does not request an injunction for the 401(k) Plan Reports,[14] but seeks additional injunctive relief not included in his complaint.  (Pl.'s Mot. 23-24; Compl. Prayer for Relief ¶¶ A-H.)  Plaintiff's motion suggests that the Court should order defendant to: (1) provide weekly payroll reports for weeks "which have not been submitted as of the date judgment is entered *and shall continue to submit the weekly payroll reports when due thereafter*"; (2) provide "an *accounting* to plaintiff for all payroll weeks which the

---

[13] This amount represents the sum of Mr. Herman's fee ($275/hour x 6.5 hours), Mr. DiPreta's fee ($250/hour x .1 hours), and the paralegals' fee ($80/hour x 32 hours).

[14] Plaintiff states that the 401(k) Plan reports for the weeks of January 19, 2011 through March 16, 2011 were not submitted, but an injunction related to those reports is not requested.  (Herman Decl. ¶ 15; Sessa Decl. ¶ 20.)

Defendant deducted funds from any employee's wages which have not been submitted as of the date judgment is entered *and shall continue to submit the weekly payroll reports when due thereafter"*; and (3) pay "all contributions determined to be due pursuant to the collective bargaining agreement for all weeks that are unpaid as of the date judgment is entered *and thereafter."* (Pl.'s Mot. 23-24 (emphasis added).) However, "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff's complaint neither requests prospective injunctive relief nor an "accounting" from defendant. (Compl. Prayer for Relief, ¶¶ A-H.) Only the injunctive relief sought by plaintiff in his complaint and requested in the instant motion, specifically, the payroll reports which have not been submitted as of the date of judgment, shall be considered. (Id. Prayer for Relief ¶ B; Pl.'s Mot. 23.)

When a plaintiff moves for a permanent injunction on a motion for default judgment, injunctive relief may be granted where "the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Labarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387 (SJ)(JMA), 2009 WL 240521, at *6 (E.D.N.Y. Feb. 2, 2009) (internal quotation omitted). Section 502 of ERISA provides that the Court may award "such other legal and equitable relief as [it] deems appropriate" in an action for nonpayment of employee contributions. 29 U.S.C. § 1132(g)(2)(E). Thus, injunctive relief is available under the statute and the first prong of this test is satisfied.

However, violation of the statute alone does not satisfy the standard for injunctive relief. A party seeking injunctive relief must also demonstrate irreparable harm should the injunction not be granted, as well as absence of another adequate remedy at law. Gesualdi v. MB3 Trucking, Inc., No. 10 CV 0573 (RJD), 2010 WL 5067819, at *9 (E.D.N.Y. Sept. 30, 2010) (citations omitted). The instant record fails to demonstrate that absent an injunction requiring defendant to submit the missing payroll reports, plaintiff is likely to suffer irreparable harm, or that money damages are insufficient.

Plaintiff's memorandum of law in support of this motion puts forth no arguments in support of his request for injunctive relief. Indeed, plaintiff states that defendant has submitted the payroll reports requested at the time the action was filed (Sessa Decl. ¶ 30), and no other specific payroll reports are requested.[15] Further, in cases where a plaintiff requests an Order that would

> require [defendant] to do no more than comply with its existing obligations under the CBA and ERISA, then the lack of an injunction cannot possibly subject [plaintiff] to any harm at all, much less irreparable harm. Indeed, by requesting relief that would do nothing to alter the parties' respective rights or obligations, the Trustee['s] application for an injunction is manifestly moot.

LaBarbera v. Best Friends Trucking Co., No. CV 07-4226 (NG)(JO), 2010 WL 1692841, at *13 (E.D.N.Y. Feb. 19, 2010) (citing DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)). Accordingly, it is respectfully recommended that plaintiff's request for injunctive relief should be denied. See also Gesualdi v. MBM Indus., Inc., No. CV-10-2607 (BMC), 2010 WL 3724348, at *3 (E.D.N.Y. Sept. 15, 2010) (finding it "unnecessary at this stage to issue an affirmative injunction ordering defendants to submit to an audit for this exact same period of time, when plaintiffs are recovering estimated damages that have been calculated in the manner prescribed under the Trust Agreement.")

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Court should enter a default judgment against defendant for: $197,568.37 in unpaid contributions; $8,098.14 in interest plus per diem interest of $17.75 from March 30, 2011 through the date of judgment; $119, 653.14 in liquidated damages; $4,372.50 in attorney's fees; and $423.28 in costs. Per diem interest and liquidated damages should be calculated by the Clerk of Court. It is further recommended that plaintiff's request for injunctive relief should be denied. Plaintiff is hereby ordered to serve a copy of this Report upon defendant at its last known address and file proof of service with the Court.

---

[15] Moreover, this Report recommends that plaintiff should be awarded estimated unpaid contributions, calculated in accordance with the formulas set forth in the trust agreement, as a result of defendant's failure to submit 401(k) Plan records for all weeks through the date of judgment. Plaintiff's instant motion does not demonstrate that these damages are insufficient or why he is likely to suffer irreparable harm.

**FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file objections. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  September 9, 2011
       Brooklyn, New York